No. 21270.

CITY OF COLORADO SPRINGS *v.* ALBERT LATHAM, JR.
(414 P.2d 110)

Decided May 9, 1966.     Rehearing denied May 31, 1966.

F. T. HENRY, LOUIS JOHNSON, for plaintiff in error.

THOMAS K. HUDSON, ALICE LOVELAND, for defendant in error.

*En Banc.*

MR. JUSTICE SCHAUER delivered the opinion of the Court.

DEFENDANT in Error, hereinafter referred to as plaintiff or by name, obtained a judgment in the trial court against plaintiff in error, hereinafter referred to as the City.

Plaintiff's action was based upon a written contract between the parties, dated November 10, 1947, by the terms of which the plaintiff, referred to as the owner, agreed to sell to the city, and the city agreed to purchase from the plaintiff, "* * * all of the water, water rights, filings, maps, reports and data of or relating to the Continential Hoosier Diversion system located in Irrigation District No. 5, Water District No. 36, Summit County, Colorado, * * *." The plaintiff agreed to furnish an abstract of title certified to date showing valid merchantable title in him to the subject property. The contract provided that if the title were found to be merchantable, the city agreed to make an initial payment of $12,500 within five days of the final approval of title. Upon making payment of $12,500 the subject property was to be conveyed by the plaintiff to the city by such proper instruments as the city might require. The city agreed to participate in a general water adjudication proceeding then pending in Summit County in order to acquire a permanent decree for the subject property in the name of the city. The plaintiff agreed to cooperate with the city in every way except financially in obtaining a satisfactory decree and in all other things appurtenant to the project. The balance of the purchase price was to be computed on the basis of $6.25 per acre foot for the number of acre feet of water authorized by final decree of the court to be diverted annually by the city through the system as the result of the rights so purchased.

54

Paragraph 4 of the contract, referred to in the evidence as the "back-out clause," reads as follows:

"If for any reason, either the failure of the city to obtain such final decree, or such decree having been obtained, the same in the opinion of the city shall be insufficient as to date of priority or as to amount of water decreed therein, or for any other reasonable cause the result of such adjudication proceeding shall be unsatisfactory to the city or the city shall be unable to obtain necessary rights of way, reservoir sites and other things necessary to the economical use of said water so decreed, the city, at its option at any time within three months from the entry of the final decree or actual diversion of water, may reassign all water, water rights, filings and appurtenant documents to the owner, including such rights, if any, obtained by the city as a result of such adjudication and based upon the rights and filings covered by this contract, whereupon all further obligation and liability of the city hereunder shall cease and this contract shall terminate as to all parties. In such event, however, the owner shall retain the initial payment of $12,500.00."

The plaintiff in his complaint alleges that he has done and performed all things required of him under the terms and provisions of the contract. The allegations in the complaint set forth that a final decree has been entered in the adjudication proceedings referred to and actual diversion of water made thereunder by the city; that pursuant to the final adjudication decree the city has a priority for 5306 acre feet of water plus 400 cubic feet of water per second, which represents to the city a total of 22,500 acre feet of water resulting from the contract; that the city has breached the contract by its failure and refusal to pay plaintiff upon demand the monies due him under the contract, to the damage of plaintiff in the sum of $140,225, plus interest and costs, for which he asks judgment.

The city, in its answer, sets out five defenses to the

complaint, and a counterclaim which was later withdrawn. A reply was filed by the plaintiff.

In a stipulated pre-trial order, it was agreed that plaintiff had furnished the abstract of title to the subject property; that the city had examined the abstract prior to making the initial payment and accepting plaintiff's deed, and found the title merchantable in plaintiff; that plaintiff had conveyed the property to the city and had cooperated with the city in every way except financially in advancing the project; that the city had taken no affirmative action under paragraph 4 of the contract, above set forth, and that in the event plaintiff is entitled to recover, the amount of recovery should be $90,000, without interest prior to judgment.

In substance, all the material provisions set forth in the contract were agreed upon. The principal issue raised by the city is simply that the plaintiff had nothing to convey and therefore the city received nothing from the plaintiff for which payment was due and owing.

The case was tried to the court without a jury on February 3, 1964. Latham testified that the city had never reassigned to him the subject property or any of the benefits derived therefrom, and that the city had taken no action under paragraph 4 of the contract. At the close of his testimony, the city moved to dismiss the action. The motion was denied. The city rested its case without offering any testimony and the court found the issues in favor of the plaintiff and directed judgment for the plaintiff for $90,000, as stipulated in the pre-trial order, plus costs. On March 19, 1964, the court filed written Findings of Fact, Conclusions of Law and Judgment, nunc pro tunc as of February 3, 1964, and dispensed with the filing of a motion for new trial.

As grounds for reversal of the trial court judgment, the city asserts its summary of argument as follows:

A. Plaintiff failed to establish by a preponderance of the evidence its right to recover under the contract marked Exhibit A.

B. Plaintiff failed to show by any evidence that the decrees secured by Colorado Springs were based on any rights conveyed by plaintiff to defendant under said contract.

C. As a matter of law this court has determined that the various filings, claims and water rights conveyed by plaintiff to defendant were in fact void and had been abandoned by predecessors in title to the plaintiff.

The evidence given as to Arguments B and C will, of course, determine the issue raised by Argument A. In its opening brief the city, through its counsel, states that "Plaintiff's right to recover is entirely dependent upon a showing that as a result of the rights purchased, the city secured a decree or diverted water as a result of said rights." The city, therefore, relies entirely in its brief upon Argument B and also argues C. We will consider the arguments in the order given.

A consideration of Argument B requires the examination of the evidence in some degree of detail. In the pre-trial order it was stipulated that plaintiff's exhibits B to J, inclusive, were filings in the office of the State Engineer, numbered, named and further identified by their respective dates of claimed priorities. These exhibits are as follows:

*Exhibit*

| B. | No. 15134—Crystal Creek— | dated July 16, 1929 |
|---|---|---|
| C. | No. 15166—Spruce | " Aug. 24, 1929 |
| D. | No. 17093—McCullough | " May 25, 1942 |
| E. | No. 17240—Blue River | " May 14, 1942 |
| F. | No. 17255— | " Aug. 17, 1942 |
| G. | No. 17256— | " Aug. 18, 1942 |
| H. | No. 17952—Hoosier System | " Oct. 19, 1948 |
| I. | No. 17953— | " Oct. 16, 1948 |
| J. | No. 17954— | " Oct. 16, 1948 |

The above filings with all appurtenant data were conveyed to the city by the plaintiff under the terms of the contract.

In the Statement of Claim, filed by the city in the adjudication proceedings, the city alleges, *inter alia*:

"That Claimant is the owner of that certain ditch and reservoir system for the diversion, storage, appropriation and utilization of water, water rights and priorities of right to the use of water for beneficial purposes, known as the *Continental-Hoosier Diversion System,* * * *." (Emphasis supplied.)

In the Statement of Claim, Exhibit K in the record, paragraph 7, on page 10, reads as follows:

"Maps and statements of the said Continental-Hoosier Diversion System and amended and supplemental maps and statements thereof have heretofore been filed in the office of the State Engineer of Colorado, and approved by him, as of the numbers and dates following, to-wit:

No. 15134, July 16, 1929
No. 15166, August 24, 1929
No. 17093, May 25, 1942
No. 17240, May 14, 1942
No. 17255, August 17, 1942
No. 17256, August 18, 1942
No. 17952, October 19, 1948
No. 17953, October 16, 1948
No. 17954, October 16, 1948."

In the Judgment and Decree of the trial court, dated March 10, 1952, the court awarded the following priorities to the units of the system described in the Statement of Claim, all as of date May 13, 1948, being the date fixed as the beginning of construction:

1. Blue River Ditch — 200 cubic feet of water per second of time.
2. Crystal Ditch — 40 cubic feet
3. Spruce Ditch — 60 cubic feet
4. McCullough Ditch — 60 cubic feet
5. East Hoosier Ditch — 50 cubic feet
6. Hoosier Ditch — Claim No. 1 — 40 cubic feet
7. Hoosier Ditch — Claim No. 2 — 20 cubic feet
8. Hoosier Tunnel — 20 cubic feet

### RESERVOIRS

1. Upper Blue Lake (Also known as Upper Quandary Lake) Reservoir — 1672 acre feet.
2. Lower Blue Lake (Also known as Lower Quandary Lake) Reservoir — 1474 acre feet.
3. Spruce Lake Reservoir — 1542 acre feet.
4. Mayflower Lake Reservoir — 618 acre feet.

The record reveals a connected chain of title in the claims represented by the filings in the office of the state engineer, which were conveyed from the plaintiff to the defendant. The 1952 decree of the district court enumerated the facilities known as "The Continental-Hoosier System" as awarded to the city, which represented the same system conveyed by the plaintiff to the defendant under the terms of the contract now in dispute in the case at bar.

In Argument C, the city claims that as a matter of law this court has determined that the water rights conveyed by Latham to the city were in fact void and had been abandoned by predecessors in title to the plaintiff. The city's claim is based upon the opinion of this court in the case of *City and County of Denver v. Northern Colorado Water Conservancy District*, 130 Colo. 375, 276 P.2d 992 (1954). We do not so construe this opinion. The case involves the adjudication of water rights by the same district court in the same adjudication proceedings, the water rights herein involved being discussed at pages 402 through 408 of the opinion. In the statement of claim the various ditches claimed priorities from October 1907, as the date of the beginning of actual construction. The court had awarded priorities to the ditches owned by the city as of date May 13, 1948, the date the city had begun construction. Therein the court stated:

"* * * the sole issue here is whether or not its predecessors in interest and title had made such beginnings of an appropriation and prosecuted the work of construction with such diligence as to entitle the City to

decrees relating back to a date before the City began its work of construction."

The court reviewed the actions of certain parties in an attempt to date the priorities back to September 27, 1927, found such actions to be abortive and sustained the trial court in fixing the date of the priorities as May 13, 1948. The opinion cited does not, as the city claims, establish that the water rights conveyed by plaintiff to the city had been abandoned or were void for any reason. The water rights so assigned by Latham to the city have now ripened into valid decreed appropriations by court decree.

To provide clarity to this opinion in the case now before the court, and to lend some assistance to reveal the intent of the parties, paragraph (2) of the contract is quoted:

"Upon payment of said initial payment of $12,500.00, all of said water, water rights, filings and appurtenant data shall be assigned and conveyed to the city by such proper instruments as may be required by the city. The city shall diligently proceed with all reasonable legal and engineering work necessary to participate in the general adjudication proceedings now pending in Breckenridge in order to acquire a permanent decree for said water and water rights in the name of the city."

The city obviously contemplated completion of the work based upon the interests obtained from the plaintiff as "* * * a result of the rights purchased * * *" as revealed by the examination of the abstract.

It is apparent from the record that plaintiff fully complied with all of the requirements imposed upon him by the contract in question and is entitled to recover the amount agreed upon in the event of such recovery in the pre-trial order. Moreover, it is noted as very significant that the city took no action to void the contract as it had the option to do under its terms. Having failed to comply with the crucial terms, the city breached the contract by its failure to pay the agreed

purchase price for the subject property when due. We find no error in the record.

The judgment is affirmed.

MR. CHIEF JUSTICE SUTTON not participating.